**M W MOODY LLC**
By: Mark Warren Moody
SDNY# 3742 Moody
43 West 43rd Street
New York, New York 10036
t. 917-414-7886
e. mwm@mwmoody.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
Diana J. Lewis,

      Plaintiff,

  - against -

Office of the Bronx District Attorney,
Darcel D. Clark and Maria T. Rivero,

      Defendants.
x-------------------------------------------------------x

Index #: 17-969

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION**

JURY TRIAL DEMANDED

    1.    Plaintiff Assistant District Attorney Diana J. Lewis ("ADA Lewis"), by and through her counsel M W MOODY LLC, as and for her Verified Complaint against Defendants Office of the Bronx District Attorney ("BronxDA"), Darcel D. Clark ("DDC"), and Maria T. Rivero ("MTR"), hereby alleges as follows:

## PRELIMINARY STATEMENT

    2.    This action is brought for invidious, systematic, and intentional employment discrimination against ADA Lewis who was discriminated against at the BronxDA's office because she had an accident and ended up in a wheelchair, resulting in the BronxDA's thoughtless, illogical, and baseless point-blank constructive discharge and refusal to accommodate ADA Lewis.

3. The action is brought pursuant to the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 – 12117; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297; and New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131.

4. The discriminatory conduct complained of in this action includes discriminatory termination (First through Third Causes of Action), defendants' failure to accommodate a disability (Fourth through Sixth Causes of Action), and retaliation (Seventh through Ninth Causes of Action).

## JURISDICTION AND VENUE

5. Jurisdiction in this Court is proper pursuant to, *inter alia*, 28 U.S.C. §§ 1331 and 1367.

6. Venue in this Court is proper pursuant to, *inter alia*, 28 U.S.C. § 1391(b) in as much as a substantial part of the events or omissions giving rise to ADA Lewis's claims occurred in this district.

## PARTIES

7. From in and around October 4, 2010 to the present, ADA Lewis has been an employee of BronxDA.

8. At all relevant times, ADA Lewis met the definition of an "employee" under all applicable statutes.

9. ADA Lewis is protected from disability-based discrimination as she has a physical impairment which, *inter alia*, substantially limits her ability to walk, sit and stand and which meets the definition of "disability" under all applicable statutes, and all but mandates that the BronxDA .

10. ADA Lewis is a wheelchair user.

11. ADA Lewis resides at 305 Lexington Avenue, Apartment 10-D, New York, New York 10016.

12. Defendant BronxDA is a New York City law enforcement agency with its principle offices located at 198 East 161st Street, Bronx, New York, 10451.

13. At all relevant times, Defendant BronxDA met the definition of an "employer" under all applicable statutes.

14. Defendant DDC is the elected District Attorney in the Bronx since January 2016 with her office located at 198 East 161st Street, Bronx, New York, 10451.

15. Defendant MTR is an Executive Assistant District Attorney at BronxDA and was the Director of Legal Recruitment.

16. MTR's office is located at 198 East 161st Street, Bronx, New York, 10451.

## PROCEDURAL REQUIREMENTS

17. ADA Lewis has complied with all statutory prerequisites to filing this action.

18. On or about October 21, 2016 ADA Lewis met with Senior Federal Investigator Ashraf Ahmed ("investigator") at the U.S. Equal Employment Opportunity Commission ("EEOC"), New York District Office, and filed charges against BronxDA for disability discrimination and retaliation under File #520-2017-00186.

19. On or about November 17, 2016 ADA Lewis received the EEOC's right to sue letter authorizing ADA Lewis to pursue her claims for unlawful employment discrimination on the basis of disability, failure to accommodate, and retaliation.

20. This action has been filed within ninety days ADA's Lewis's receipt of the right to sue letter.

## FACTUAL ALLEGATIONS

21. ADA Lewis is a hard-working fifty-three-year-old woman who went to law school after a successful television career.

22. ADA Lewis graduated law school in June 2010 at the age of forty-six (46) and began working as an ADA at BronxDA on or about October 4, 2010.

23. Throughout her employment at BronxDA, ADA Lewis told numerous colleagues, including supervisors, that being an ADA was the best job she had ever had.

24. ADA Lewis received substantially exceptional reviews from her supervisors and got along well with her colleagues.

25. ADA Lewis was seriously injured on or about October 22, 2011.

26. ADA Lewis fractured her left tibial plateau and sheered nerves in her lumbosacral plexus as a result of an accident.

27. ADA Lewis was prescribed an ankle foot orthotic to address the corresponding foot drop and weakness, but her situation grew progressively worse.

28. ADA Lewis gave Executive Assistant District Attorney MTR, at the time BronxDA's Administrative Assistant District Attorney, medical records to document her injury.

29. On two occasions Dr. Judith Kahn ("Kahn"), ADA Lewis's physiatrist, wrote letters to BronxDA advising that ADA Lewis needed to work part-time.

30. ADA Lewis continued to carry her full caseload and after short periods of time, ADA Lewis returned to work full-time.

31. In the fall of 2014, Dr. Naresh Rao ("Rao"), ADA Lewis's primary care physician, prescribed a wheelchair for ADA Lewis.

32. ADA Lewis began using a wheelchair full-time in January 2015.

33. Upon information and belief, no other wheelchair users are or were employed by BronxDA.

34. BronxDA is comprised of three (3) buildings: the Bronx Criminal Court ("BCC"), the Bronx Hall of Justice ("HOJ"), and 198 East 161st Street.

35. ADA Lewis travelled between BCC and HOJ on a daily basis.

36. ADA Lewis's wheelchair contained a warning not to use it in snow or rain.

37. ADA Lewis had difficulty travelling between the buildings during inclement weather.

38. ADA Lewis had difficulty commuting in her wheelchair during inclement weather.

39. ADA Lewis had access problems in both BCC and HOJ.

40. On April 21, 2015 ADA Lewis had a wheelchair accident in HOJ and filed an accident report.

41. ADA Lewis gave a copy of the accident report to BronxDA. Then District Attorney Robert T. Johnson ("Johnson") called ADA Lewis to inquire about her condition.

42. On or about April 13, 2015 ADA Lewis spoke to the ADA liaisons of the Office of Court Administration ("OCA") for both BCC and HOJ, Mr. Frank Tufano ("Tufano") and Mr. Mario Malave ("Malave") respectively, informing them of her access problems.

43. Particularly disturbing to ADA Lewis was that construction had recently been done on the front entrance of BCC.

44. When the front entrance reopened it was not wheelchair accessible and wheelchair users were relegated to a separate side entrance that was less safe and not open during the same hours as the front entrance.

45. On or about April 27, 2015 ADA Lewis wrote letters to Tufano and Malave memorializing her concerns.

46. Copies of these letters were provided to Assistant District Attorney Lisa Waller, the Equal Employment Opportunity liaison in the bureau where ADA Lewis was assigned.

47. ADA Lewis contacted New York Lawyers for the Public Interest (NYLPI), who in March 2015 wrote a report entitled "Accessible Justice" which highlighted and publicized barriers in New York City courthouses that people with mobility impairments faced.

48. In late April 2015, ADA Lewis started working with NYLPI.

49. On September 22, 2015, ADA Lewis signed a retainer agreement with NYLPI as part of a class action lawsuit against the City of New York regarding access issues in courthouses.

50. On or about May 5, 2015, Rao (ADA Lewis's primary care physician) wrote a medical leave letter to BronxDA for ADA Lewis.

51. ADA Lewis went out on Long Term Disability ("LTD") on May 15, 2015.

52. ADA Lewis began receiving LTD benefits on February 10, 2016, backdated to November 15, 2015.

53. ADA Lewis informed MTR that she was receiving such benefits.

54. ADA Lewis began receiving Social Security Disability ("SSD") benefits on June 12, 2016 which were backdated to November 15, 2015.

55. ADA Lewis believed that if her commute were easier, she could tolerate a full work-day.

56. In early to mid 2016, ADA Lewis emailed MTR and asked to be transferred to Special Narcotics in Manhattan as an accommodation.

57. MTR denied this request, claiming that some people would consider that a promotion, not an accommodation.

58. MTR did not suggest that there may be some alternative accommodation for ADA Lewis to continue working.

59. This already suggested that MTR was operating from a perspective of discriminatory animus which subsequently became even clearer.

60. Eventually ADA Lewis requested to work on appeals from home as an accommodation.

61. MTR denied this request because ADA Lewis, a salaried employee, could not "hand scan" in and out of work.

62. Upon information and belief, many New York City agencies do not require salaried attorneys to "hand scan" in and out of work.

63. With this accommodation (i.e. working from home), ADA Lewis could perform the essential functions of her job as an assistant district attorney, and is and was ready, willing, and able to do so.

64. Since 1999, nearly 20 years ago, working from home has been an officially sanctioned accommodation by the EEOC. *See* [https://www.eeoc.gov/facts/telework.html](https://www.eeoc.gov/facts/telework.html).

65. Once again, MTR did not engage in any discussion with ADA Lewis about an alternative accommodation.

66. This furthers the likelihood of discriminatory animus.

67. Upon information and belief, on or about June 20, 2016 NYLPI and the Law Department signed an SNA to resolve the access problems at the BCC and the HOJ.

68. Upon information and belief, on or about June 20, 2016, NYLPI revealed the identities of its four class action clients to the Law Department.

69. ADA Lewis was one those four clients.

70. On June 27, 2016, seven (7) days after the revelation of ADA Lewis as one of the class action plaintiffs, ADA Lewis received a telephone call from MTR.

71. MTR told ADA Lewis that they would speak once ADA Lewis recovered from her surgery.

72. The next time MTR spoke to ADA Lewis, MTR demanded that AD Lewis resign.

73. ADA Lewis held back tears and told MTR she would "hate" to resign and asked MTR again if she could work from home on appeals.

74. MTR informed ADA Lewis that she could not but agreed to ask the new District Attorney, DDC, and get back to ADA Lewis.

75. Subsequently, MTR confirmed that ADA Lewis could not work from home because ADA Lewis could not "hand scan", that working from home is a violation of New York City rules and that this rule was in place because of "no show" jobs.

76. Once again MTR – throughout this series of conversations with ADA Lewis – did not once discuss any alternative accommodation for ADA Lewis's disability.

77. Defendants' claims as to "hand scans" are solely pre-textual and serve no legitimate purpose – particularly not given the fact that ADA Lewis is a salaried employee.

78. At no point over the course of several months did BronxDA engage in a good faith interactive process with ADA Lewis to determine if a reasonable accommodation could be found.

79. On October 22, 2016 ADA Lewis emailed MTR and informed her that she was not resigning and that she had filed EEOC charges against BronxDA.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Discriminatory Constructive Discharge/Termination**
**in Violation of 42 U.S.C. §§ 12112 – 12117)**

80. ADA Lewis repeats and realleges each allegation contained in each aforementioned paragraph as though fully set forth herein.

81. BronxDA did not attempt to reassign ADA Lewis before demanding she resign.

82. There can be no doubt that ADA Lewis was terminated from BronxDA as a direct and proximate result of her disability.

83. Accordingly, ADA Lewis seeks injunctive relief allowing her to work on appeals from home (or another suitable position), and/or in the alternative compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

84. Defendants' unlawful and discriminatory conduct in violation of 42 U.S.C. §§ 12112 – 12117 was outrageous, was intended to injure ADA Lewis, and was done with criminally conscious disregard of ADA Lewis's civil rights, entitling ADA Lewis to an award of punitive damages in an amount to be determined at trial, but in no event less than three million dollars ($3,000,000.00).

85. ADA Lewis should also be awarded her reasonable attorneys' fees, as well as the costs and disbursements of the action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Discriminatory Constructive Discharge/Termination in Violation of N.Y. Exec. Law §§ 290 to 297)

86. ADA Lewis repeats and realleges each allegation contained in each aforementioned paragraph as though fully set forth herein.

87. ADA Lewis has a serious physical impairment resulting from a neurological condition which limits her ability to sit, walk and stand, requires her to use a wheelchair, and is demonstrable by medically accepted clinical and laboratory diagnostic technique.

88. By demanding ADA Lewis's resignation, the BronxDA either discriminatorily terminated or constructively discharged ADA Lewis in Violation of N.Y. Exec. Law §§ 290 to 297.

89. Accordingly, ADA Lewis seeks injunctive relief allowing her to work on appeals from home (or another suitable position), and/or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

90. Defendants' unlawful and discriminatory conduct in violation of the New York State Human Right's Law, N.Y. Exec. Law §§ 290 to 297 was outrageous, was intended to injure ADA Lewis, and was done with criminally conscious disregard of ADA Lewis's civil rights, entitling ADA Lewis to an award of punitive in an amount to be determined at trial, but in no event less than three million dollars ($3,000,000.00).

91. ADA Lewis should also be awarded her reasonable attorneys' fees, as well as the costs and disbursements of the action.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Discriminatory Termination / Constructive Discharge**
**in Violation of N.Y. City Admin. Code §§ 8-101 to 131)**

92. ADA Lewis repeats and realleges the foregoing allegations as if fully set forth herein.

93. BronxDA is a New York City agency charged with upholding the law.

94. By demanding ADA Lewis's resignation, the BronxDA either constructively discharged or terminated ADA Lewis's employment on the basis of discrimination against her disability in violation of N.Y. City Admin. Code §§ 8-101 to 131.

95. Accordingly, ADA Lewis seeks injunctive relief allowing her to work on appeals from home (or another suitable position), and/or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

96. Because Defendants are charged with enforcing the law and their conduct shows such reprehensible disregard of ADA Lewis's civil rights, ADA Lewis should be awarded punitive damages in an amount to be determined at trial, but in no event less than three million dollars ($3,000,000.00).

97. ADA Lewis should also be awarded her reasonable attorneys' fees, as well as the costs and disbursements of the action.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Failure to Accommodate in Violation of 42 U.S.C. §§ 12112 – 12117)**

98. ADA Lewis repeats and realleges the foregoing allegations as if fully set forth herein.

99. BronxDA did not engage in an interactive process with ADA Lewis to come up with a reasonable accommodation.

100. ADA Lewis is over fifty, has multiple medical problems and is a wheelchair user.

101. ADA Lewis loved her job and it is unlikely she will find similar employment, if she will find suitable employment at all.

102. Upon information and belief, BronxDA is familiar with federal antidiscrimination laws.

103. Upon information and belief, BronxDA knew it was violating federal law when it did not engage in an interactive process with ADA Lewis or allow her to work from home on appeals.

104. Accordingly, ADA Lewis seeks injunctive relief allowing her to work on appeals from home (or another suitable position), and/or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

105. Because Defendants are charged with enforcing the law and their conduct shows such criminally reprehensible disregard of ADA Lewis's civil rights, ADA Lewis should be awarded punitive damages in an amount to be determined at trial, but in no event less than three million dollars ($3,000,000.00).

106. ADA Lewis should also be awarded her reasonable attorneys' fees, as well as the costs and disbursements of the action.

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Failure to Accommodate in Violation of N.Y. Exec. Law §§ 290 to 297)**

107. ADA Lewis repeats and realleges the foregoing allegations as if fully set forth herein.

108. It is the Equal Employment Opportunity Commission's policy that technology has advanced enough for employees to perform at least some essential functions of their job at home.

109. The Equal Employment Opportunity Commission has determined that telecommuting is a reasonable accommodation.

110. The essential functions of working on appeals can be done from home.

111. Regular attendance is not an essential function of working on appeals.

112. Working on appeals does not require face-to-face interaction and coordination with other employees.

113. Working on appeals does not require immediate access to documents or other information located only in the workplace.

114. MTR's reason that ADA Lewis could not work from home was that ADA Lewis could not "hand scan."

115. That makes little sense as ADA Lewis was a salaried employee.

116. No alternative accommodations were offered to ADA Lewis.

117. Accordingly, ADA Lewis seeks injunctive relief allowing her to work on appeals from home (or other suitable employment), and/or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

118. Defendants are charged with enforcing the law and their conduct shows such criminally reprehensible disregard of ADA Lewis's civil rights that ADA Lewis should be awarded punitive damages in an amount to be determined at trial, but in no event less than three million dollars ($3,000,000.00).

119. ADA Lewis should also be awarded her reasonable attorneys' fees, as well as the costs and disbursements of the action.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(Failure to Accommodate in Violation of N.Y. City Admin. Code §§ 8-101 to 131)**

120. ADA Lewis repeats and realleges the foregoing allegations as if fully set forth herein.

121.    ADA Lewis proposed two (2) possible accommodations to BronxDA through MTR – i.e., transferring to Special Narcotics or working from home on appeals.

122.    Both options were refused by BronxDA through MTR.

123.    ADA Lewis could, with the reasonable accommodation of, *inter alia*, working on appeals from home, satisfy the essential requisites of being an assistant district attorney.

124.    Accordingly, ADA Lewis seeks injunctive relief allowing her to work on appeals from home (or other suitable employment), and/or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

125.    Defendants are charged with enforcing the law and their conduct shows such criminally reprehensible disregard of ADA Lewis's civil rights that ADA Lewis should be awarded punitive damages in an amount to be determined at trial, but in no event less than three million dollars ($3,000,000.00).

126.    ADA Lewis should also be awarded her reasonable attorneys' fees, as well as the costs and disbursements of the action.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of 42 U.S.C. §§ 12112 – 12117)

127.    ADA Lewis repeats and realleges the foregoing allegations as if fully set forth herein.

128.    Defendants retaliated against ADA Lewis for complaining about the accessibility of Bronx courthouses and being one of four clients who entered the SNA with the Law Department to correct the access problems in New York City courthouses.

129.    On June 27, 2016, seven (7) days after the Law Department learned that ADA Lewis was a client of NYLPI and was involved in the SNA, ADA Lewis received a call from MTR.

130. MTR and ADA Lewis did not have a substantive talk on June 27, 2016 as ADA Lewis was scheduled for surgery the next day.

131. The next time ADA Lewis and MTR spoke, MTR demanded that ADA Lewis resign.

132. No alternative solutions were offered by MTR or anyone else at the BronxDA.

133. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Section 42 U.S.C. §§ 12112 – 12117, ADA Lewis has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, loss of status, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

134. Accordingly, ADA Lewis seeks injunctive relief allowing her to work on appeals from home (or other suitable employment), or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

135. Defendants' unlawful and retaliatory conduct in violation of 42 U.S.C. §§ 12112 – 12117 was outrageous and malicious, was intended to injure ADA Lewis, and was done with such conscious disregard of ADA Lewis's civil rights so as to suggest a criminal indifference thereto, entitling ADA Lewis to an award of punitive damages in an amount to be determined at trial, but in no event less than three million dollars ($3,000,000.00).

136. ADA Lewis should also be awarded her reasonable attorneys' fees, as well as the costs and disbursements of the action.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
**(Retaliation in Violation of N.Y. Exec. Law §§ 290 to 297)**

137. ADA Lewis repeats and realleges the foregoing allegations as if fully set forth herein.

138.	ADA Lewis complained about the access problems in Bronx courthouses while she was employed by BronxDA.

139.	ADA Lewis wrote letters to OCA complaining of the access problems and gave copies of those letters to BronxDA.

140.	ADA Lewis gave a copy of her accident report to BronxDA.

141.	ADA Lewis then became part of a class action lawsuit against New York City for its courthouse access problems.

142.	The inaccessibility of the courthouses presents a substantial and specific danger to the public's health and safety.

143.	The timing of the events strongly compel the conclusion that BronxDA unlawfully retaliated against ADA Lewis.

144.	As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Section 296 of the New York State Human Rights Law, ADA Lewis has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, loss of status, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

145.	Accordingly, ADA Lewis seeks injunctive relief allowing her to work on appeals from home (or other suitable employment), or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

146.	Defendant's unlawful and retaliatory conduct in violation of Section 296 of the New York State Human Rights Law was outrageous and malicious, was intended to injure ADA Lewis, and was done with such conscious disregard of ADA Lewis's civil rights as to suggest a

criminal indifference thereto, entitling ADA Lewis to an award of punitive damages in an amount to be determined at trial, but in no event less than three million dollars ($3,000,000.00).

147. ADA Lewis should also be awarded her reasonable attorneys' fees, as well as the costs and disbursements of the action.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Retaliation in Violation of N.Y. City Admin. Code §§ 8-101 to 131)

148. ADA Lewis repeats and realleges the foregoing allegations as if fully set forth herein.

149. Terminating ADA Lewis because of her involvement with OCA and the NYLPI constitutes unlawful retaliation.

150. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of New York City Human Rights Law, ADA Lewis has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, loss of status, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

151. Accordingly, ADA Lewis seeks injunctive relief allowing her to work on appeals from home (or other suitable employment), or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

152. Defendants' unlawful and retaliatory conduct in violation of Section 8-107 of the New York City Human Rights Law was outrageous and malicious, was intended to injure ADA Lewis, and was done with such conscious disregard of ADA Lewis's civil rights to suggest a criminal indifference thereto, entitling ADA Lewis to an award of punitive damages in an amount to be determined at trial, but in no event less than three million dollars ($3,000,000.00).

153.  ADA Lewis should also be awarded her reasonable attorneys' fees, as well as the costs and disbursements of the action.

**WHEREFORE**, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows:

**On the First Cause of Action** injunctive relief allowing ADA Lewis to work on appeals from home or (or other suitable employment), in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00); and punitive damages in an amount to be determined at trial but in no event less than three million dollars ($3,000,000.00), together with plaintiff's reasonable attorneys' fees and the costs and disbursements of the action;

**On the Second Cause of Action** injunctive relief allowing ADA Lewis to work on appeals from home (or other suitable employment), or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00); and punitive damages in an amount to be determined at trial but in no event less than three million dollars ($3,000,000.00), together with plaintiff's reasonable attorneys' fees and the costs and disbursements of the action;

**On the Third Cause of Action** injunctive relief allowing ADA Lewis to work on appeals from home (or other suitable employment), or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00); and punitive damages in an amount to be determined at trial but in no event less than three million dollars ($3,000,000.00), together with plaintiff's reasonable attorneys' fees and the costs and disbursements of the action;

**On the Fourth Cause of Action** injunctive relief allowing ADA Lewis to work on appeals from home (or other suitable employment), or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00); and punitive damages in an amount to be determined at trial but in no event less than three million dollars ($3,000,000.00), together with plaintiff's reasonable attorneys' fees and the costs and disbursements of the action;

**On the Fifth Cause of Action** injunctive relief allowing ADA Lewis to work on appeals from home (or other suitable employment), or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00); and punitive damages in an amount to be determined at trial but in no event less than three million dollars ($3,000,000.00), together with plaintiff's reasonable attorneys' fees and the costs and disbursements of the action;

**On the Sixth Cause of Action** injunctive relief allowing ADA Lewis to work on appeals from home (or other suitable employment), or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00); and punitive damages in an amount to be determined at trial but in no event less than three million

dollars ($3,000,000.00), together with plaintiff's reasonable attorneys' fees and the costs and disbursements of the action;

**On the Seventh Cause of Action** injunctive relief allowing ADA Lewis to work on appeals from home (or other suitable employment), or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00); and punitive damages in an amount to be determined at trial but in no event less than three million dollars ($3,000,000.00), together with plaintiff's reasonable attorneys' fees and the costs and disbursements of the action;

**On the Eighth Cause of Action** injunctive relief allowing ADA Lewis to work on appeals from home (or other suitable employment), or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00); and punitive damages in an amount to be determined at trial but in no event less than three million dollars ($3,000,000.00), together with plaintiff's reasonable attorneys' fees and the costs and disbursements of the action;

**On the Ninth Cause of Action** injunctive relief allowing ADA Lewis to work on appeals from home (or other suitable employment), or in the alternative, compensatory damages in a sum to be determined at trial, but in no event less than one million dollars ($1,000,000.00); and punitive damages in an amount to be determined at trial but in no event less than three million dollars ($3,000,000.00), together with plaintiff's reasonable attorneys' fees and the costs and disbursements of the action.

Dated:   New York, New York

February 9, 2017

**M W MOODY LLC**

*Counsel for Plaintiff*


_____S/_____

By: Mark Warren Moody